THE PEOPLE, *ex rel.* Johnson, *vs.* THE CITY OF BROOKLYN.

THE SAME *vs.* THE SAME.

Under the former charter of the city of Brooklyn, passed in 1834, the common council had no power to assess adjoining lots for flagging side walks. In June and April, 1850, the common council passed an ordinance, requiring the side walks on Tillary street to be flagged by the owners. Some of the owners of property upon the street failed to comply. In July and September, ordinances were passed, directing the work to be done by the city authorities, and that the expense should be a lien on the lots. The work was completed previous to the 1st of January, 1851. In 1851 the common council caused an assessment to be made, for this work, by the street commissioners, all the proceedings for which were in comformity with the new city charter, passed in 1850, but which did not go into effect until the 1st of January, 1851. *Held* that the work having been directed and completed while the charter of 1834 was in force, the payment or collection of the consequent expenses must be according to its provisions, and that the common council had no power to make, or collect, an assessment, under the provisions of the new charter, for the expenses of the improvement.

The People *v.* City of Brooklyn.

The provisions of the new charter, of 1851, relative to improvements, and the mode of raising the necessary expenses thereof, apply only to improvements subsequently to be made.

THIS was a certiorari to the city of Brooklyn, to review the proceedings of the mayor and common council in the matter of flagging portions of the side-walks of Tillary street, between Bridge and Navy streets, a part of which flagging was in front of, and adjacent to, the property of the relator ; the expense of which flagging was apportioned and assessed upon the adjoining lands.

*H. Hagner*, for the relator.

*N. F. Waring*, for the defendants.

EMOTT, J. In both these cases it appeared that the common council of Brooklyn, in June and April, 1850, passed an ordinance requiring the side-walks on the particular street in question to be flagged by the owners. Some of these parties, and among others the relator, failed to comply. In July and September of the same year, ordinances were passed reciting the former ordinances and the failure of certain owners to obey them, and directing the work to be done by the city authorities, and that the expense of it should be a lien on the lots. Contracts were then made for the flagging, in August and September, 1850, between the city and contractors. When the work was actually done or paid for does not distinctly appear. In 1851 the common council caused an assessment to be made, for this work, by the street commissioners. Under the original charter of 1834, there was no power to assess adjoining lots for side-walks. That was conferred by the act of 1850, and all these proceedings were in conformity to that act. But the act of 1850 did not by its terms take effect previous to January 1, 1851 ; and as this improvement had been made, or the side-walks directed and subsequently constructed before the act took effect, the city acquired no right to institute assessment proceedings to pay for such antecedent acts.

The assessments should be set aside in both cases.

S. B. STRONG, J.   The proceedings of the corporate authorities, which it is sought to set aside by the certiorari in these cases, related to flagging the street side-walks adjoining the lots of the relator, and of several other proprietors.   The work was directed, pursued and completed previous to the 1st of January, 1851, although the assessment was made and the collection of the amount assessed was directed, after that date. The entire work having been directed and completed while the act of 1834, constituting the then charter of the city of Brooklyn, was in force, the payment or collection of the consequent expenses must be according to its provisions.   The appropriate application of the act which went into operation on the 1st of January, 1851, constituting the existing charter of the city, so far as it relates to improvements and the method of raising the necessary expenditures, is to those which should be subsequently made.   If it was competent for the legislature to devolve the expenses of improvements previously perfected upon others than those who were bound to pay for them when they were made, an intent to effectuate what is so obviously unjust is not to be inferred.   When there is a clear and positive injunction which may operate harshly, there is no room for construction, but when the claimed duty or power is only inferential, it is not to be presumed that the legislature intended to effectuate injustice.   By the act of 1834, (§ 26, *subd.* 16,) the common council was authorized to "direct and regulate the flagging of side-walks or laying the same with bricks," but no power is given to impose the payment of the necessary expenses upon the adjoining owners.   There is a provision, (§ 40,) authorizing the common council to devolve the expense of paving streets upon the owners of lands to be benefited thereby; but that did not sanction the procedure in this case, because, first, the statute makes an evident distinction between flagging side-walks and paving streets ; second, the expenses were to be paid by all who were to be benefited, and not as in this instance solely by the owners of the adjoining lots ; and third, the assessments were to be made by "the assessors of the city," and not as was done in this case, by the street commissioners.

The People *v.* City of Brooklyn.

That act, therefore, did not authorize the proceedings of which the relator complains.

The act which went into operation on the 1st of January, 1851, is, as has been already stated, inapplicable. If it had been applicable, there is an uncertainty as to the persons by whom the assessment was to be made, which would render the exercise of any power to that effect very hazardous. By the 22d section of title 2, the common council is authorized to cause side-walks to be flagged, and the expenses thereof to be assessed on the adjoining lots, in the same manner as for regulating, grading and paving streets. By the 22d section of title 4, it is provided that the expenses of regulating, grading and paving streets shall be assessed by one or more commissioners. And by the 30th section of the last mentioned title the expenses of flagging side-walks shall be assessed by the street commissioner. It is possible, and I think I have so decided, in a late case, that the provision in the 22d section of title 2, refers to flagging anew side-walks when the previous work does not conform to the ordinances of the common council. If it does I see no provision in the act authorizing the common council to devolve the expenses of a new flagging upon the owners of the adjoining lands. If the provision in the 2d title applies to original flagging, then there are two utterly discordant provisions in the same act, relative to the assessment to pay the contingent expenses. In such cases, where they purport to sanction an invasion of private property, neither should prevail. Our property should not be taken from us, for any purpose, without clear and unequivocal authority.

My conclusion is that the assessment in this case was not authorized by any statute, and that therefore it should be annulled.

BROWN, P. J., concurred.

Assessment set aside.

[KINGS GENERAL TERM, October 14, 1856. *Brown, S. B. Strong* and *Emott,* Justices.]