# SUPREME COURT.

## MICHAEL BRENN agt. THE CITY OF TROY.

The charter of the city of Troy, in reference to the powers of the common council in opening and widening streets and alleys and keeping the same in repair, &c., (*section* 1, *title* 4) says, that "the expense of all new work or improvements and alterations, not in the nature of ordinary repairs, shall be assessed and be a. lien upon the property benefited when completed, in sections or as whole, and so certified to the comptroller by the local assessors."

Where the common council, by resolution, directed the city engineer to establish the grade of Oakwood avenue from the Hoosick road northerly to the water-works gate; and also directed the proper authorities to advertise for proposals,. &c.:

*Held*, that the *expense* of such work should be assessed upon the property to be: directly benefited thereby and not upon the property of the city at large. This was new work and not an ordinary repair, within the true construction of the above provision and all others of the charter bearing on the question.

To justify a *general tax* upon the property of the city for a work or improvement, in the nature of the work in question, two things are required by the charter: 1st. The work must not be new: 2d. It must be only an *ordinary repair.*

*Special Term, Troy, June 22d,* 1871.

INGALLS, *J.*

ON the 18th day of May, 1871, the common council of the city of Troy, by resolution, directed the city engineer to establish the grade of Oakwood avenue from the Hoosick road northerly to the water works gate. And also directed the proper authorities to advertise for proposals for grading said avenue, when the grade should be established by the engineer. This resolution has been approved by the mayor, but limiting the expense to a sum not exceeding $2,500. The city engineer has established the grade, which requires an excavation upon a portion of said avenue varying from a few inches to four and a half feet, and upon another portion thereof requiring a filling varying, from a few inches to

about four feet. There has been an advertisement soliciting proposals to execute the work, and some bids have already been received, but the contract has not yet been awarded. It is contemplated by the city authorities to let the contract for executing the said work, to the lowest responsible bidder, and to raise the money necessary to defray the expense of said work, by a tax upon all the property liable to taxation within the city of Troy. For the purposes of a highway, the proposed grade is preferable to the present grade.

J. P. ALBERTSON, *for plaintiff.*
R. A. PARMENTER, *for defendant.*

INGALLS, J.—Substantially but one question has been discussed by counsel upon this motion, which is: Whether the money necessary to defray the expense of said work is, by the charter of said city, required to be raised by tax upon all the taxable property within the city, or upon the property to be directly benefited by such improvement.

This presents for determination a simple question of power to tax, which must be derived from the charter and laws not inconsistent therewith. And all considerations of expediency or equality of taxation must be rejected as belonging to the legislature and not to the judiciary. It is the duty of the court to fairly construe and enforce the law as it is enacted, but not to legislate. The 1st section of title 3 of said charter provides as follows: " The legislative powers of said city shall be vested in the common council." Such powers are subordinate to authority of the legislature of the state, and must be exercised in accordance with the charter of said city, and the laws not inconsistent therewith, granted by the legislature. In construing such charter its language must receive a reasonable interpretation with a view to ascertain and effectuate, as far as possible, the intention of the legislature.

Section 1 of title 4 of said charter provides as follows:. "The common council shall have power under the restrictions and limitations hereafter mentioned, and in pursuance of existing laws, not inconsistent herewith, to cause streets,. alleys and avenues to be opened and widened, and to be regulated, graded and paved, and the streets, alleys and avenues to be kept in repair, and from time to time to be repaired or regraded and repaired ; to provide that lamp posts and lamps be erected ; and cisterns made for the purpose of providing water in case of fire ; to cause sewers and drains, wells and pumps to be constructed and repaired ; and generally cause such other improvements in and about such streets, alleys, avenues and squares, to be made as the public want or convenience shall require. *The expense of all new work or improvements and alterations not in the nature of ordinary repairs, shall be assessed and be a lien upon the property benefited, when completed, in sections or as a whole, and so certified to the comptroller, by the local assessors."* In my judgment, the latter clause of the above section, reasonably construed, requires the expense of the work in question to be assessed upon the property to be directly benefited thereby, and not upon the property of the city at large. The language employed is clear and unambiguous. *"The expense of all new work, or improvements and alterations not in the nature of ordinary repairs."* The last expression, *" not in the nature of ordinary repairs,"* used in that connection, is significant, and has the effect to qualify the portion of the section which immediately precedes it, in regard to new work, or improvements and alterations, and aids very much in determining what should be regarded new work within the meaning of said section. To justify a general tax upon the property of the city for a work or improvement in the nature of the work in question, two things are required by the charter : 1st. The work must not be new ; 2d. It must be only an *ordinary repair.* It would seem to be an unwarrantable construction to hold that

a work or improvement involving an excavation and filling of the magnitude of the one contemplated, and attended with such an expenditure of money, and which would wholly change the grade and condition of the avenue, did not constitute a new work, but should be regarded only an ordinary repair of the highway. The very words, " in the nature of ordinary repairs," used in that connection naturally suggest to the mind, the idea that only such work as would be necessary to preserve the highway in its usual condition without any material change in its grade, was intended. If by wear or otherwise it became uneven, it should be repaired by depositing thereon gravel or other material to create an even surface, or if a bridge decayed and became insecure, it should be repaired, or even replaced if necessary, by a new one. These would be regarded in the nature of ordinary repairs, because they would be such as were necessary to the reasonable use and enjoyment of the highway in its usual condition. The improvement contemplated must be fairly considered extraordinary, both in regard to the proposed change in the grade and condition of the highway, and the expense attending the work. Again section 16 of the same title provides, " Whenever an improvement shall be ordered by the common council, contemplated in the foregoing provisions, *except* the opening or widening of streets, alleys and avenues, the expense of such improvement shall, within fifteen days thereafter, be apportioned and charged upon the property and persons benefited thereby." The language employed in this section seems to imply that the city at large can only be taxed in this respect for the purpose of ordinary repairs to the highways, and that all other improvements of this nature must be borne by the persons and property directly benefited. Again, in section 25 of the same title, the expression " *ordinary expenses of repairing streets*" is employed, and in such connection as to indicate that it was the design to limit the nature and extent of such repairs, in which particular it

is in harmony with the other provisions refered to, in which substantially the same expression is employed. But I deem the following section of said title still more significant, as bearing upon this question of construction : Section 26 provides that the said common council in addition to the foregoing shall and may in each and every year cause a sum' sufficient to pay all the ordinary and necessary expenses of maintaining the city government, including the *maintaining of the highways* of said city and the bridges thereon, and the maintenance of the Hudson river between Troy and Albany, to be raised, levied and collected by tax, which sum shall be raised, apportioned, levied and assessed in one tax upon the real and personal property liable to taxation in the city of Troy."

Oakwood avenue is, by section 30 of said 4th title, expressly declared to be one of the highways of said city. In section 26 the expression is, "*maintaining the highways*." Webster's dictionary, which has become in effect a law book on questions of construction, defines the word "*maintain*" as follows : "*To hold, preserve, or keep in any particular state or condition ;* to sustain; not to suffer to fail or decline." It would certainly be unwarrantable to hold that the work in question was embraced within the terms "maintaining of highways." The change contemplated is too radical and extensive to be regarded as ordinary repair, essential to maintaining the highway in its usual or ordinary condition. Suppose a contract had been entered into by which a party agreed to *maintain the highway in question, and to make all ordinary repairs,* I apprehend no person would contend that such obligation would embrace the improvement in question. The various provisions of the charter, so far as they bear upon this question, seem to be harmonious; and it is quite apparent that it was the intention of the authors of such charter, acting through the legislature to restrict, as far as practicable, the liability of the city to taxation for improvements of the nature of the one in question, and to impose

the burden upon those who were expected to derive direct benefit therefrom. With the wisdom of such policy we have nothing to do. The question presented by this motion is one of power, not expediency, and if such policy is unwise the legislature must provide the remedy. I, therefore, conclude that the expense of the contemplated improvement, if incurred, cannot legally be imposed by tax upon the city at large, but must be assessed upon the property to be directly benefited thereby.

I have examined the case cited by the city attorney—*The People* agt. *The City of Brooklyn* (25 *Barb.*, *Rep.* 585). The particular provisions of the charter of Brooklyn are not stated, and the reasoning of Judge STRONG, in his opinion, does not, in my judgment, conflict materially with the views herein expressed.