the greater part of their powers, which it conferred on the newly formed board of proprietors.

Huntington's Dongan patent had complete revision in 1873. The territory of Babylon was set off (chapter 105), and later (chapter 492) the charter trustees of Huntington were abolished, and new town officers substituted. Similar important modifications were enacted in respect to the trustees of Brookhaven. Chapter 73, Laws 1899. When this constitutional objection was urged as to New York City, it was held that the Dongan Charter was governmental, and not private, and therefore was subject to full power of amendment. Demarest v. Mayor, 74 N. Y. 161. The fact that these trustees at one time had title to the common lands, and have also title to the lands under water, and are vested with riparian rights, does not make them the less public. Such title is held in trust for all the inhabitants as a public and governmental agency. The Legislature can therefore change the number of such trustees, and can make their term of office biennial, to conform to the elections of other town officials. The Dartmouth College Case applies to institutions that are private. It would be intolerable to impose such a prohibition upon a municipal charter, however perfect it may be. Covington v. Kentucky, 173 U. S. 231, 241, 19 Sup. Ct. 383, 43 L. Ed. 679. It is vain to seek to bind town governments to seventeenth century limitations. The principle of the Dartmouth College Case is not to be extended. It would cripple the state in the effective control of its citizens and in advanced measures for their welfare. Least of all should it be invoked to check the growth and development of towns which started under conditions now outgrown. Hence it is concluded that the act of 1902 was in proper form, and within the constitutional power of the Legislature. It follows that the defendants are the lawful trustees of the freeholders and commonalty of the town of Southampton, and that the relators are without lawful right to such office.

Judgment is directed accordingly.

---

NEW YORK CENT. & H. R. R. CO. v. CITY OF BUFFALO et al.

(Supreme Court, Equity Term, Erie County. May, 1912.)

1. MUNICIPAL CORPORATIONS (§ 428*)—PUBLIC IMPROVEMENTS—SPECIAL ASSESSMENTS—"PREMISES."

City Charter of Buffalo, § 288, provides that it is the duty of the owner or occupant of any premises in the city to lay sidewalks in front of them whenever ordered by the common council, and that, if the same is not done, they shall be laid by the city, and the expense assessed upon such premises. A railroad company used the lowered tracks through part of the street, which street was intersected by others. *Held* that, as to the right of way in the street, the railroad company was the occupant of premises which are lands and tenements, the subject of grant, and so it was liable to assessment for the laying of walks on the intersecting streets which abutted on its premises.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1038; Dec. Dig. § 428.*

For other definitions, see Words and Phrases, vol. 6, pp. 5509–5513; vol. 8, p. 7761.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MUNICIPAL CORPORATIONS (§ 428*)—PUBLIC IMPROVEMENTS—ASSESSMENTS—
    VALIDITY.
        Where, under City Charter of Buffalo, § 288, providing that the occu-
    pant of premises shall lay sidewalks when ordered, and that, if laid by
    the city, the expense thereof shall be assessed against the premises, the
    municipality laid sidewalks around part of a railroad company's right
    of way, the cost of which was specially assessed against that portion as
    well as other portions of the railroad company's right of way, the assess-
    ment, while invalid as to those portions in front of which no walks were
    laid, is valid as against the property in front of which walks were laid.
        [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
    1038; Dec. Dig. § 428.*]

Action by the New York Central & Hudson River Railroad Com-
pany against the City of Buffalo and George M. Zimmerman, as Comp-
troller, to vacate an assessment.   Assessment vacated in part and
complaint dismissed.

    Hoyt & Spratt (Alfred Becker, of counsel), for plaintiff.
    Clark H. Hammond, Corp. Counsel (Herbert A. Hickman, of coun-
sel), for defendants.

BROWN, J.   [1] Section 288 of the charter of the city of Buffalo
provides that it is the duty of the owner or occupant of any
premises in the  city to lay sidewalks in front of such premises
whenever the same shall be ordered by the common council.   The com-
missioner of public works shall notify the owner or occupant of any
premises in front of which such work shall be required to be done
that, if the same is not done within 10 days, the same shall be done by
the city and the expense thereof will be assessed upon such premises.
In case such work shall not be done within such time, said commis-
sioner may cause the same to be done and the expense thereof shall
be a charge and lien upon such premises.   All assessments for such
work shall be assessed upon the lands and premises in front of which
the work is done according to the lineal frontage.

    For many years prior to 1894 the plaintiff maintained two railroad
tracks crossing Main street and extending westerly through the terrace
at grade.   In 1894, under an arrangement with the grade crossing
commissioners of the city, these tracks were depressed, passing under
Main street by means of a bridge or tunnel and passing through the
terrace in an open cut fifteen feet deep at its easterly or Main street
end, and by a uniform grade rising to the street level at its westerly
end, where it crossed West Seneca street.   The northerly and south-
erly sides of this cut and its easterly end were inclosed by a stone wall
rising about three feet above the street level of the terrace, on the top
of which was erected an iron fence three or more feet high, completely
fencing and effectually closing the same, except at its westerly end.
Over this cut at its intersection with Pearl and Franklin streets were
erected footbridges for the use of pedestrians.   All the expense of
such work included within the outside lines of such wall was borne
by the plaintiff; the defendant agreeing to maintain and keep such
wall in repair.   The city paved the terrace on all sides of the cut up

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

to the outside edge of such retaining wall. All of the lands and premises within the outside lines of these walls since 1894 have been in the exclusive occupation of the plaintiff for railroad purposes, except as the public has used the footbridges at Pearl and Franklin streets. The title to the fee of these lands, as is all of the terrace, is in the city of Buffalo. The depressing of its tracks through the terrace by means of this cut and the consequent exclusive occupation of the same has been of great benefit to the plaintiff. The public is effectually excluded from the plaintiff's railroad tracks in this cut. No pedestrian or vehicle can reach them. It is a permanent structure, erected under grant and franchise from the city, and is under the exclusive and complete control of the plaintiff. In 1904 the common council of the city ordered the plaintiff to build a sidewalk along the northerly, easterly, and southerly sides of the cut and retaining walls thereof. The commissioner of public works notified plaintiff of such order, and, upon failure of plaintiff to build the same, the defendant built such sidewalks, and the expense thereof was assessed against the railroad tracks of the plaintiff in the cut in the terrace, and the tracks in Fourth, Erie, Wilkeson, Church, and Norton streets. Such assessment for such sidewalk not having been paid, the tracks of the plaintiff in such streets were sold, bid in by the city, and the comptroller of the city gave notice that, unless such property was redeemed from such sale, he would on the 30th day of June, 1911, execute and deliver to the city as the purchaser at such assessment sale a conveyance of the said tracks. Whereupon this action was brought to vacate such assessment and to restrain the execution of such deed, upon the ground that the building of the sidewalk was without authority, and that there was no jurisdiction in the assessment of the expense of such sidewalk upon plaintiff's railroad tracks.

The contention of the plaintiff is that it is not the occupant of any premises in the terrace within the meaning of section 288 of the city charter, nor is it the occupant of land and premises in front of which the sidewalk was laid and the assessment levied within the meaning of such section. In support of such contention it is urged that People ex rel. Davidson v. Gilon, 126 N. Y. 147, 27 N. E. 282, O'Reilley v. Kingston, 114 N. Y. 439, 21 N. E. 1004, and In re Anthony, 46 Misc. Rep. 525, 95 N. Y. Supp. 77, are decisive thereof. Such authorities do not reach the question presented. People ex rel. Davidson v. Gilon decided that the tracks of the New York & Hudson River Railroad Company in Madison avenue were not subject to assessment for street improvements under a statute which provided that assessment for such improvement should be levied upon the owners or occupants of all the houses and lots benefited. O'Reilley v. Kingston turned upon the question whether the railroad tracks in the center of the streets could be assessed for street improvements under a statute providing that no part of such expense should be assessed on lands not bordering on or touching the street. In re Anthony holds that the right of a street railway, electric light, telephone, or gas supply corporation to maintain their rails, wires and pipes within the street are not subject to assessment for the expense of widening a street occupied by such property.

The question here is, Is the plaintiff such an occupant of premises as is defined by the section of the charter above referred to? The plaintiff is admittedly the occupant of certain lands. It is admittedly the sole and exclusive occupant of the lands bounded by the retaining walls and the east line of Seneca street. Are those lands premises, and do they front on the terrace on their north and south sides and on Main street on the east end? What are premises? Washburn says premises is used for the lands and tenements which are the subject of grant. Webster says premises is the land granted or conveyed, the thing granted or delivered by deed. Standard Dictionary defines premises as being a distinct portion of real estate.

This piece of real estate, completely inclosed on its north and south sides and on its east end, with the southerly street line of West Seneca street marking its western end, is certainly a distinct portion of real estate and constitutes certain definite, accurately described, actual premises. A city lot extending entirely across a block fronts on both of the streets running across its ends. A block bounded by four streets fronts on each of the four streets. The northerly side of the premises in question fronts on the north terrace. The southerly side fronts on the south terrace, and the east end fronts on Main street. The conclusion is therefore reached that the plaintiff is the occupant of the premises in the terrace and of the lands and premises in front of which the sidewalk was laid and the assessment levied within the meaning of section 288 of the city charter.

The statute provides that assessments for laying sidewalk shall be assessed upon the premises in front of which such walks are laid, according to the lineal frontage. Under this statute, it appears to be quite immaterial whether the laying of the sidewalk was of any benefit to the plaintiff or otherwise. If the validity of this assessment was dependent upon the fact of benefit to the plaintiff by the laying of the sidewalk much could be said from the evidence leading to the conclusion that it is of substantial benefit to plaintiff's occupation of these premises as they occupy them to have the sidewalks as built to give pedestrians a reasonably secure right of way and access to the foot-bridges at Franklin and Pearl streets and a reasonably safe place to walk in reaching the plaintiff's terrace station from Main street. All of plaintiff's annoyance and risk in operating its railroad through the terrace at grade has been eliminated. The dangers to pedestrians and vehicles have been removed, the depressing of the track, construction of the cut, and the erection of the retaining walls and fence have shut out the public from these premises, and denied to pedestrians and vehicles the free use of the highway. The statutory requirement that the plaintiff in excavating its cut through the terrace should restore the highway to its former state of usefulness could not be better complied with than by giving the foot traveler therein a sidewalk as a protection from congested vehicle traffic of the street, especially as it is recalled that such vehicle traffic is only congested by reason of the fact that the plaintiff has taken and exclusively occupied its premises substantially in the center of the street. There is no just or fair rea-

son why the plaintiff should not construct such sidewalk. The statute authorized the city to build it at plaintiff's expense.

[2] It is said, however, that the assessment is void for the reason that it was not laid according to the lineal frontage. The assessment was levied upon the plaintiff's tracks in the terrace, Fourth, Erie, Wilkeson, Church, and Norton streets. This certainly was not making an assessment for a sidewalk in front of plaintiff's premises in the terrace according to the lineal frontage. Such assessment should only have been laid upon the premises in front of which the sidewalk was laid. But the assessment was not void for such error. It was a good assessment so far as the plaintiff's tracks in the terrace were concerned. It was void as to plaintiff's tracks in Fourth, Erie, Wilkeson, Church, and Norton streets. The assessment for the entire expense of the sidewalk from plaintiff's tracks in the terrace may be upheld and the assessment upon the property in the other streets vacated and set aside. Brennan v. City of Buffalo, 162 N. Y. 491, 57 N. E. 81.

Judgment is ordered dismissing plaintiff's complaint as to the property affected by the assessment, sale, redemption, and execution of deed in the terrace, and vacating the assessment and all subsequent proceedings as affecting the plaintiff's property in Fourth, Erie, Wilkeson, Church, and Norton streets, without costs to either party.