THE PEOPLE ex rel. JOHN DAVIDSON et al., Respondents, *v.* EDWARD GILON et al., Assessors, etc., Appellants.

The fact that the rails, ties and tracks of a street surface railroad are property and subject to taxation generally, affords no sufficient reason for taxing them for street improvements, when the law has not made them specially assessable for such purposes.

By the charter of the city of New York (Chap. 410, Laws of 1882), no power is given to the municipality to assess the property of a street railroad company for an improvement of a street through which the road runs. The power given by it to the board of assessors (§ 868) to assess

for that purpose "upon the property benefited in the manner authorized by law," is limited (§ 878) to the houses and lots benefited, and upon the owners and occupants of these alone can the assessment be imposed.

The provision of said charter (§ 899) included in the title (3) in reference to "vacating and modifying assessments," which, after providing that certain specified omissions and defects shall not be sufficient reason for vacating or setting aside an assessment, declares "that all property in said city benefited by any improvement   *   *   *   shall be liable to assessment for such improvement," was not intended to introduce a new class of subjects for taxation, or to extend the power given by the preceding provisions; it applies only to such property as had previously been defined, and such as the municipal authorities were permitted to assess.

In proceedings by certiorari to review an assessment for a street improvement in said city, based upon the ground that the property of a surface railroad company, operating its road upon said street, was property benefited, and so liable to assessment, but was omitted, the record contained no evidence tending to show that it was benefited, and the board of assessors returned that it was not. *Held*, that the burden was upon the relator to show that the property was benefited; that the question was one of fact to be determined by the board of assessors, and, in the absence of evidence in the record, its determination could not be reviewed by the General Term.

*It seems*, also, that the determination of said board could not, in any event, be reviewed upon a certiorari, except for errors of law. (Code Civ. Pro. § 2140.)

*People ex rel. Davidson* v. *Gilon* (58 Hun, 76), reversed.

(Argued February 23, 1891; decided April 14, 1891.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made October 24, 1890, which reversed a determination of the board of assessors of the city of New York upon an assessment for paving Madison avenue, which was brought for review by certiorari, and remitting the proceedings to said board.

The facts, so far as material, are stated in the opinion.

*D. J. Dean* and *George L. Stirling* for appellants. The structure of a surface railroad in a street is not assessable for a pavement thereof under the laws of this state. (Laws of 1813, chap. 86, § 175; Laws of 1882, chap. 410, §§ 869, 870, 878, 879, 915; *In re Second Avenue Church*, 66 N. Y. 395;

*In re Cram*, 69 id. 452; *In re Schell*, 76 id. 432.) The railroad structure was not benefited by the paving, and the board of assessors have so determined. There is no evidence in the case on which the assessors' conclusion should be annulled. (*In re Eager*, 46 N. Y. 100; *In re Cruger*, 84 id. 619; *People ex rel.* v. *Kelly*, 33 Hun, 389; *Ground* v. *Mayor, etc.*, 15 Wend. 374; *State* v. *Jersey City*, 36 N. J. Law, 56; *N. Y. & H. R. R. Co.* v. *Town of Morrisania*, 7 Hun, 652; *Gilmore* v. *City of Utica*, 121 N. Y. 561; *T. L. Co.* v. *Kane*, 9 Hun, 506; 72 N. Y. 614; *People ex rel.* v. *City of Dunkirk*, 20 Wkly. Dig. 230; *City of Philadelphia* v. *P., etc., R. Co.*, 33 Penn. St. 41; *F. R. Co.* v. *City of Philadelphia*, 88 id. 424.)

*Truman H. Baldwin* for respondents. The question of what property is benefited, and of the quantum of benefit is vested by statute in the board of assessors, and not in the common council nor the counsel to the corporation. (Laws of 1882, chap. 410, §§ 215, 868, 878; Laws of 1880, chap. 556, § 5.) The instructions of the counsel to the corporation to the board of assessors on which they acted were contrary to law. (*Colgate* v. *Mayor, etc.*, 12 N. Y. 140; Laws of 1870, chap. 383, § 27; Laws of 1882, chap. 410, § 899; Laws of 1874, chap. 313, § 1; Laws of 1880, chap. 556, § 5; Laws of 1881, chap 296; Burroughs on Tax. § 6; 1 Desty on Tax. § 24; *People ex rel.* v. *Town of Carolton*, 52 Barb. 106; *People ex rel.* v. *Cassidy*, 46 N. Y. 46; *People ex rel.* v. *Comrs. of Taxes*, 82 id. 459; *People ex rel.* v. *Comrs. of Taxes*, 101 id. 322; *Smith* v. *Mayor, etc.*, 68 id. 553; *P. & I. R. R. Co.* v. *Hannah*, 68 Ind. 561; *City of Chicago* v. *Baer*, 41 Ill. 306; *Mayor, etc.*, v. *D. D., etc.. R. R. Co.*, 112 N. Y. 137; *Mayor, etc.*, v. *E. A. R. R. Co.*, 118 id. 389; *Roosevelt Hospital* v. *Mayor, etc.*, 84 N. Y. 108; *T. W. P. Co.* v. *Parker*, 3 Vroom, 426; *N. J. R. R. Co.* v. *City of Elizabeth*, 37 N. J. L. 330; *E. R. R. Co.* v. *Commonwealth*, 66 Penn. St. 84; *Buffalo Cemetery* v. *Buffalo*, 46 N. Y. 506; *Mayor, etc.*, v. *E. A. R. R. Co.*, 29 N. Y. S. R. 17.)

RUGER, Ch. J.   This is an appeal from a judgment of the General Term, in certiorari proceedings, reversing an assessment made by the board of assessors, upon the ground that they omitted to assess the tracks of the New York and Harlem Railroad Company for a share of the expenses incurred in repaving Madison avenue in the city of New York.   The proceedings were instituted under the provisions of the Code and the facts appear in the return made by the board of assessors to the certiorari.   It appears therefrom that the relator was the owner of a house and lot on Madison avenue, subject to assessment for the expense of repaving such street, and the railroad company was the owner of a double-track surface horse railroad in the same street.   The repavement was constructed of granite blocks laid over the face of the entire street, including the space between the railroad tracks.

It is claimed by the relator that the railroad was benefited by the improvement, and for that reason, should have been assessed for a share of the expense in making it.  No evidence was given by him showing the benefit received by the railroad from such improvement, and the case was heard before the General Term upon the return of the defendants certifying that the railroad acquired no benefit by the repavement of the street.

The questions presented are, first, whether the railroad was liable, under the charter, if benefited, to be assessed for the expense of the improvement, and, second, whether the General Term was authorized to determine without proof that it was so benefited and reverse the opposite finding by the board of assessors and require the imposition of an assessment upon it. The sole authority for making improvements in streets and levying assessments therefor in the city of New York, is found in the provisions of its charter, and unless the power of assessing street railroad companies is conferred thereby, the assessors have no authority to assess such property.   The fact that the rails, ties and track of a street surface railroad are property and subject to taxation, generally, affords no sufficient reason for taxing them for street improvements, unless the law has made them specially assessable for such purposes.

The scheme of the charter of New York, and of municipal corporations, generally, in this state, has been to assess the burdens of street improvements in some form upon the property benefited, and it is upon that theory that such assessments have usually been justified. It cannot be said, we think, as a matter of course, that street railroads are benefited by repavement of the streets through which they are laid, and if they are not so, in fact, it would be contrary to the general policy of the law to tax them with the expense of such improvements. It is the general custom of municipal corporations, in granting privileges to railroad companies to occupy streets, to impose terms as a condition to the exercise of such right, and such conditions are, undoubtedly, lawful, and may be enforced in some form for the benefit of the municipal corporations making such grants. These conditions frequently refer to the repairs upon the streets or contributions to the public treasury in lieu thereof, and when imposed usually define the right of the corporation to levy taxes, and the limits of the liability of the railroad corporation to pay them.

In the case of *Gilmore* v. *City of Utica* (121 N. Y. 561), it was held that the private owners of property fronting on a street in said city have no vested right or claim, *de jure*, that a railroad company lawfully operating its road in the street shall repair, or bear the expense of repairing it. In that case the city charter specially authorized the common council to require street railroads to repave between their tracks and at least two feet on each side thereof when the common council deemed such repavement necessary; but it was held that this provision was directory merely, and that an assessment upon the lot owners for the expense of a repavement was not, as matter of law, erroneous because it omitted to assess the property of the street railroad therefor. No such provision is contained in the charter of New York, or the law authorizing street railroads therein, and a solution of the first question must, therefore, be found by an examination of the provisions of the charter relating to the powers of the municipal authorities in respect to local improvements and assessments. If the power

of making such assessments is not found in the charter, then they do not possess it, for they have no authority on the subject except such as the charter confers upon them. These powers are found in chapter 410, Laws of 1882, in the sections hereinafter referred to from title 2, headed "assessments for improvements other than opening and closing streets. For what purposes assessments may be imposed, and how." Section 865 states that the board of assessors are "charged with the duty of making the estimates and assessments required by law for building wells, erecting pumps, pitching, paving, regulating and repairing streets, relaying pavements, constructing sewers, fencing vacant lots and public slips and all other improvements directed by corporation ordinance for which an assessment may be made." By section 868 it is provided that "assessments hereinafter imposed for local improvements in said city shall be made by the board of assessors" upon certificates of the expense thereof, made to it by the head of the department charged with the execution of the work, and of the comptroller, certifying the interest of installments advanced or payments made on account of such work, and continues that "thereafter the said board of assessors shall assess upon the property benefited, *in the manner authorized by law*, the aggregate amount of such certificates." By section 878 it is made lawful for the mayor, aldermen and commonalty to cause street improvements and an estimate of the expense thereof to be made, and a "just and equitable assessment thereof among *the owners or occupants of all the houses and lots* intended to be benefited thereby in proportion, as nearly as may be to the advantage each shall be deemed to acquire."

These provisions are simple and unambiguous, and if it was deemed desirable, for any reason, to enlarge the description of property liable to assessment for repaving streets, there seems to be no room for a construction which should authorize a departure from the plain signification of the language of the statutes. The owners and occupants of houses and lots are obviously benefited by improvements in the streets on which they reside, and which add to the value of their property and

increase the comfort and convenience of living in such localities, and are, therefore, properly subjected to the expense of making them.   Others may be benefited by such improvements, but their interest is generally so remote, uncertain and indefinite that they have not usually been regarded as liable to be taxed for such purposes.

This is plainly indicated by the provisions of the charter relating to the enforcement of the collection of such assessments and making them liens upon houses and lots alone. And a further indication is found in the sections defining the persons who may petition for such improvements, and the safeguards thrown around assessable property to protect it from excessive valuation.   (§§ 870, 875.)   These privileges are conferred upon the owners and occupants of houses and lots alone.

In pursuance of these provisions, the common council required the work in question to be constructed, and ordained "that the board of assessors be and they are hereby directed to make a just and equitable assessment of the expenses of conforming to the provisions of this ordinance among *the owners and occupants of all the houses and lots* intended to be benefited thereby, in proportion, as nearly as may be, to the advantages which each may be deemed to acquire."   In accordance with this requirement, the assessors imposed upon the owners and occupants of houses and lots on the line of this improvement, its entire expense.   The General Term, upon the assumption that the railroad company was benefited by the repavement in question, and that all persons benefited were liable to assessment, have reversed the determination of the assessors and required them to make a new assessment imposing a part of the expense upon the railroad company.

We think this decision finds no support in the provisions of the charter.   Property like that in question has been for a long course of years exempt from assessment for local improvements in New York, and no reason is perceived for now making a change in their practice.

By section 175 of chapter 86 of the Laws of 1813, it was provided that it shall be lawful for the city authorities to pave

the streets and lay "a just and equitable assessment thereof
among the owners and occupants of all the houses and lots
intended to be benefited thereby, in proportion, as nearly as
may be, to the advantage which each shall be deemed to
acquire." Under this act, assessments for street improvements
in New York were made from the time of its enactment until
the passage of the Consolidation Act in 1882. These provis-
ions were substantially re-enacted in that act, and since that
time the charter has been the measure of the authority of the
assessors of New York in making assessments of property for
the payment of the expenses of street improvements. During
a period of nearly eighty years these statutes have been prac-
tically construed by the municipal authorities to authorize
assessments for such purposes, to be imposed upon the owners
and occupants of houses and lots alone. For a large portion
of this period, surface street railroads operated with horses
have been in use in the city of New York, and have not been
made liable to the payment of taxes for street improvements,
either by the laws of their creation, or by the charters of that
city, as construed by the municipal authorities, and they have
not hitherto been supposed to be subject to such taxes and have
not been taxed therefor.

The authority derived from this cotemporaneous construc-
tion of the charter is entitled to great weight and should not
be lightly disregarded. The departure from this long-con-
tinued practice, contemplated by the judgment appealed from,
is attempted to be justified by a reference to the provisions of
sections 868 and 899 of the charter, which it is claimed
authorize an assessment for such expenses upon all property
benefited thereby. It is argued that the language of these
sections authorizes such an inference, and that an assessment
which does not embrace such property in its estimate, is erro-
neous. A careful reading of these sections fails to show, we
think, any warrant for the inference attempted to be drawn
from them. Section 868, as we have before seen, provides
that when the expenses of the improvements shall be certified
that "thereafter the said board of assessors shall assess upon

the property benefited, *in the manner authorized by law,*" the aggregate amount of such expenses.

The construction of this section adopted by the court below is that it authorizes a tax for local improvements upon any and all property benefited thereby, ignoring the limitation imposed upon the authority conferred by the use of the qualifying terms " in the manner authorized by law."

This section does not purport to define the subjects to be assessed, except in general terms, and obviously refers to other provisions for the mode in which such assessments shall be made. We are thus thrown back upon the express provisions, hereinbefore referred to, to determine the mode required to be pursued in making such assessments. That mode is provided by the subsequent section (878) specifically defining the property liable to assessment. It would seem to follow that this section is not an authority for the proposition contended for.

Neither do we think section 899 can be construed as enlarging the subjects of taxation for street improvements. That section is found under title 3, entitled " Vacating and modifying assessments." This section, after defining certain omissions, irregularities and defects in assessments, provides that their existence shall not be sufficient reason for vacating or setting such assessments aside, and continues by providing that " all property in said city benefited by any improvement, or other public work   *   *   *   shall be liable to assessment for such improvement or work, and all assessments for any such improvement, or public work, shall be valid and binding, notwithstanding any such omission, irregularity, defect in authority or technicality."

It will be seen that this provision is general in its terms and is used in connection with a subject not pertaining to the purpose of this inquiry. The law makers were then treating of the causes which should invalidate assessments after they were made, and not of the power intended to be conferred upon the municipal authorities in making them. That subject had already been specially dealt with in section 878 and treated with particularity and detail by express provisions, and it is

not at all probable that the law makers intended to reopen the question and introduce a new class of subjects for taxation by the indefinite language contained in this general provision.

They had already expressly defined the property which would be benefited by local improvements and was liable to assessment therefor, and it is unreasonable to suppose that they intended by this provision to confer an uncertain and indefinite power upon the municipal authorities to tax all and any property for the expense of an improvement which might possibly be benefited by it.

Owners and occupants of houses and lots on adjoining streets; the traveling public generally, and real estate owners in the vicinity may reasonably be supposed to derive benefit from an improvement in their neighborhood; but it cannot be said that it was intended by the provision in question to require their taxation for the purpose of defraying its expense. Settled rules of construction subordinate general expressions used in a statute to the specific provisions on the same subject, for it is said that "in covenants and laws that are in other respects equal, that which is particular and applicable to the present case takes the place of that which is general." (Potter Dwarris on Statutes, 134; Sedgwick on Statutes, 360.)

The reasonable construction of the sentence quoted is to apply it, therefore, to such property only as the statute had previously defined to be benefited and such as the municipal authorities were permitted by the charter to assess for such improvements.

We also think there was no foundation for the conclusion reached by the General Term, that the railroad company were benefited by the improvement in question. The burden of showing that such property was liable to assessment lay upon the relator, and unless he caused it to appear in some way, from the record, that it was benefited, no error affirmatively appeared in the record. The court below assumed this fact and based their assumption, as appears in their opinion, upon the circumstance that the pavement between the track afforded a foot-path for the horses employed on the railroad and war-

ranted an inference that it was, therefore, benefited thereby. It seems to us that this inference is not well founded. It is doubtless possible to conceive of a case where such a pavement might be of benefit to a horse railroad company, but we do not think that it can be said to be so generally, or even in any case, unless exceptional circumstances make it so appear. The fact whether certain property is benefited by a particular improvement in a street, depends upon the peculiar circumstances surrounding the property, which may exist in one case and be absent in another, and these can be made to appear only by evidence of such circumstances. This information is not contained in the case and could not be made known to an appellate tribunal except by evidence. There is no claim in the case but that the previous pavement between the rails afforded the railroad company a good track for its horses, or that any reason existed why they should wish to make a change.

The suggestion made in the opinion below that a solid stone track was necessarily an improvement upon any other track for horses is, I think, unwarranted by observation or experience; but, however this may be, the question was one of fact to be determined by the assessors and could not be reviewed in these proceedings by the General Term in the absence of any evidence on the subject. The board of assessors have returned that the company were not benefited by the improvement and we are bound to assume that that board performed its duty and reached that conclusion after inquiry and inspection of the property proposed to be assessed. Such board is, by the charter, made the exclusive judge (subject to review by the board of revision) of the property supposed to be benefited, and the extent of such benefit and their determination of such question, cannot be reviewed upon certiorari, except for errors of law. (§ 2140, Code of Civil Procedure.) They had the power to assess upon their own knowledge and judgment, after an inspection of the property, and, in the nature of things, that knowledge and the grounds of their determination could not be reproduced before an appellate tribunal in such manner as to enable a legal review thereof to

be had.    (*Matter of Cruger*, 84 N. Y. 619; *People ex rel.* v. *McCarthy*, 102 id. 630.)

For the reasons stated the order of the General Term should be reversed and the writ dismissed, with costs.

All concur.

Order reversed.