### LILIENTHAL v. CITY OF YONKERS.

(Supreme Court, Appellate Division, Second Department. June 23, 1896.)

MUNICIPAL CORPORATIONS—CONTRACT FOR PUBLIC IMPROVEMENTS.

    Yonkers City Charter (Laws 1881, c. 184, as amended by Laws 1887, c. 19) tit. 7, § 17, which requires the mayor to open bids for public improvements on the day named in the notice that bids would be received, or on such subsequent day as the council might adjourn to, and provides that the "common council shall determine which proposal is the most favorable," does not require the determination of such question at the meeting at which the bids are opened.

Appeal from special term, Westchester county.

Action by Susan P. Lilienthal against the city of Yonkers to set aside an assessment of plaintiff's property for the cost of paving a portion of North Broadway in the year 1894. There was a judgment in favor of plaintiff, and defendant appeals. Modified.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

James M. Hunt, for appellant.
Frederick W. Holls, for respondent.

BROWN, P. J. We deem it sufficient in this case to state our conclusions upon the questions presented, and the result we have reached upon the whole case:

1. The work done on North Broadway in the year 1875, and for which an assessment was levied upon the plaintiff's property, was not paving. In the assessment roll put in evidence by the plaintiff, the work is designated as "graveling." The claim that the road was paved appears to rest upon the provision of the specifications that it was to be "ballasted" with stone. This was required, however, only upon a strip 20 feet wide, "where designated on the plans," and it is conceded that the points so designated on the plans were all south of the plaintiff's property. The estimates for ballasting and graveling contained in the specifications show that the road was to be ballasted upon less than one-fifth of its entire length. It was to be covered over its entire length with five inches

of gravel and one inch of earth, which was to be rolled with a city roller, as directed by the inspector in charge. The charter of the defendant distinguishes between graveling and paving, and the work done in 1875 could not, in our judgment, be properly designated as a pavement.

2. The work for which the present assessment was levied was pavement. In the specifications the work to be done on the street is designated as "Macadam pavement" and "Telford pavement." The "gutter pavement" was to be of stone. The character of the work called for fulfills the meaning of the word "pavement," as defined by lexicographers, and as it is understood in ordinary intercourse. The meaning of the word cannot be limited by the particular material used on the street, nor has it reference solely to the manner in which the material is spread upon the street. Any substance which is spread upon the street so as to form a compact, hard, or level surface or floor may be properly designated as "pavement." In re Phillips, 60 N. Y. 22; Warren v. Henly, 31 Iowa, 31; Burnham v. City of Chicago, 24 Ill. 496.

3. The proceedings of the common council in the awarding of the contract were regular and valid. The respondent's contention on this branch of the case is answered completely by the case of Tingue v. Village of Port Chester, 101 N. Y. 294, 4 N. E. 625. The provision of the charter of Port Chester there considered was as follows:

"Upon the day mentioned in the notice, or upon such other day as the trustees may adjourn to for such purpose, the president shall, in the presence of the trustees, open the sealed proposals for constructing the work, * * * and the trustees shall then determine whose is the most favorable proposal, and may then, by a vote of two-thirds of all its members, to be ascertained by taking and recording the ayes and noes, authorize and direct the construction of the proposed work, and accept the most favorable bidder."

The provision of the defendant's charter required the mayor or the presiding officer to open the proposals in the presence of the common council on the day named in the notice, or upon such subsequent day as the council might adjourn to, and provided that "the common council shall determine which proposal is the most favorable." [1] It differs from the Port Chester charter only in the omission of the word "then" from the last sentence. We have not been impressed with the force of the respondent's argument by which he attempts to distinguish the present case from the case cited. If the contention that the trustees of the village of Port Chester were bound to determine the most favorable proposal immediately upon the opening of the bids, and before adjournment, could not be sustained under the language of the charter of that village, a similar contention based upon the provisions of the defendant's charter must certainly be overruled.

4. It follows from these conclusions that the plaintiff's property was not, under the defendant's charter, wholly exempt from an assessment for the work done on the street, but was liable for one-third of the expense thereof. Sections 2, 16, tit. 7, of the charter,

---

[1] Laws 1881, c. 184, tit. 7, § 17, as amended by Laws 1887, c. 19.

as amended by chapter 465, Laws 1890. We are of the opinion, however, that these sections do not relate to the setting of the curb and the pavement of the gutter. The law relating to the assessment for that part of the work is contained in section 21, tit. 7, of the charter (Laws 1881, c. 184), as amended by chapter 19 of the Laws of 1887, and directs that:

"The expense thereof shall be assessed by the assessors with the expense of paving such street in the same report and assessment upon lots of land only that shall front upon such street and in proportion to the respective frontage thereof."

The expense of paving the street is to be assessed upon the several lots of land benefited by the improvement, but the expense of setting the curb and making the gutters is to be assessed only upon lots fronting upon the street, in proportion to their respective frontages.

Our conclusion is that the judgment should be modified so as to provide that the plaintiff's property is liable to be assessed for its proportionate part of one-third of the total expense thereof, to wit, for the sum of $791.53, and for the sum of $931.59 for the expense of gutters and curbs, amounting in all to $1,723.12; and as so modified the judgment should be affirmed, without costs of appeal. All concur, except PRATT, J., not voting.