KNICKERBOCKER ICE COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

First Department, May 16, 1924.

Municipal corporations — action to recover back amount of assessment for street paving paid by plaintiff — plaintiff is owner of incorporeal hereditaments of wharfage and cranage — ordinance authorizing pavement was passed in 1894, pursuant to Consolidation Act of 1882, § 878, and provided that street should be paved in accordance with Laws of 1889, chap. 449, and that expense should be assessed among owners or occupants of all houses and lots intended to be benefited — assessment against plaintiff's incorporeal rights illegal — assessment could only be made against owners of houses and lots — charter of 1897, § 946, does not authorize assessment and is not applicable.

An assessment against the owner of incorporeal rights of wharfage and cranage for the purpose of paying the cost of pavement in the city of New York, which was laid in 1897, was without authority and illegal and the plaintiff is entitled to recover back payment of the same, since it appears that the pavement was laid and the assessment levied under an ordinance passed in 1894 which provided that the street should be paved in accordance with chapter 449 of the Laws of 1889, and that the board of assessors should make a just and equitable assessment of the expense among the owners or occupants of all the houses and lots intended to be benefited in proportion to the advantages which each may be deemed to acquire; and that said ordinance was passed in pursuance of the authority given by section 878 of the Consolidation Act of 1882 which likewise limited the assessment of the expense to house and lot owners.

Section 946 of the charter of 1897 does not authorize assessing the expense against the owners of incorporeal rights and, furthermore, that statute is not applicable since it was not in force when the pavement was authorized and will not be held to be retroactive.

MARTIN, J., dissents.

APPEAL by the plaintiff, Knickerbocker Ice Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 30th day of July, 1919, upon the dismissal of the complaint upon the merits after a trial before the court at the New York Trial Term, a jury having been waived.

*Herman Goldman* [*Irving Zion* of counsel], for the appellant.

*George P. Nicholson,* Corporation Counsel [*Elliot S. Benedict* of counsel; *John F. O'Brien* and *Charles W. Miller* with him on the brief], for the respondent.

FINCH, J.:

This action was brought to recover the amount of an assessment paid to the city of New York for an alleged benefit to the property

of the plaintiff by reason of a paving of a portion of East street. A jury was dispensed with, and after a trial the court gave judgment for the defendant, dismissing the complaint. No question is raised but that if the assessment was illegally levied, the plaintiff is entitled to recover.

The trial court found that the plaintiff was the owner of, and that " the Collector of Assessments and Arrears intended to describe the said rights and privileges of the plaintiff to collect wharfage and cranage, to wit: ' All manner of wharfage, cranage, advantages and emoluments growing or accruing by or from that part of East Street extending from the Southerly side of Rivington Street two hundred feet southerly more or less; being the same rights, privileges or franchises which were granted by the Mayor, Aldermen and Commonalty of the City of New York to Michael Dougherty by a certain grant bearing date December 28, 1852, and recorded in New York County Register's office in Liber 648 of Conveyances, page 136.' "

Upon this record, therefore, it is impossible to say that the plaintiff had any rights in any bulkhead or pier except the incorporeal hereditaments of wharfage and cranage.

Section 878 of the Consolidation Act of 1882 (Laws of 1882, chap. 410) made it " * * * lawful for the Mayor, Aldermen, and Commonalty to cause common sewers * * * to be made in any part of the City, and to order and direct the pitching and paving the streets thereof, * * * and to cause estimates of the expense of conforming to such regulations to be made, and a just and equitable assessment thereof among the owners or occupants of all houses and lots intended to be benefited thereby, in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire; and the assessors, after having made such estimate and assessment, shall certify the same in writing, and being confirmed, it shall be binding and conclusive upon the owners and occupants of such lots so to be assessed, respectively, and shall be a lien or charge on such lots as aforesaid; * * *." Pursuant to this authority, in April, 1894, after appropriate advertising and the conducting of hearings as required by law, an ordinance was duly adopted which provided that the carriageway of East street should be paved in accordance with chapter 449 of the Laws of 1839, and that the work should be done at the public expense, and " that the Board of Assessors be and they are hereby directed to make a just and equitable assessment of the expense of conforming to the provisions of this ordinance, among the owners or occupants of all the houses and lots intended to be benefited thereby in proportion as nearly as may be to the advantages which each may be deemed

to acquire." · Pursuant to this ordinance, the city of New York in 1895 awarded a contract for the making of the improvements. The contractor began work in 1897 and completed the same on January 3, 1898. The assessors, after the completion of the work and on September 12, 1899, proceeded to make up their assessment roll for the levying of assessments to pay for the improvement, and included in their assessment list as subject to their assessment the following item:

| " Map | Block | Ward | Owner | Front foot | Amount |
| 63 | 319 | 36 | | 200 | $1,245.28." |

The trial court has found that by this item the assessors intended to describe the incorporeal hereditament of the plaintiff, as described above. In 1913, in order to prevent a sale to satisfy the lien, the plaintiff paid to the city the amount of the assessment with interest and charges, and it is to recover back this amount that this suit is brought.

The appellant contends that the board of assessors were without authority to make an assessment against its property, since the same did not come within the classification of houses and lots but consisted of incorporeal rights and privileges only, namely, rights of cranage and wharfage.

Since the ordinance above noted was the only authority which the city adopted for carrying out this work and levying an assessment therefor pursuant to the permission of the Legislature given by said section 878 of the Consolidation Act and chapter 449 of the Laws of 1889, this limited and defined the right to assess to houses and lots, and since appellant was not the owner of any houses or lots, therefore, the assessment as to it was without authority and illegal. (*People ex rel. Davidson* v. *Gilon,* 126 N. Y. 147.)

The respondent contends, however, that the following language in said chapter 449 of the Laws of 1889: " The common council of the city of New York, by ordinance, may require the same to be so paved, repaved or repaired, and the expense thereof to be assessed on the property benefited thereby; said work to be done and said assessment to be laid in accordance with the existing provisions of law relating to the paving of streets of the said city," permits the incorporeal rights of the plaintiff to be assessed. In answer to this contention, it is to be noted that the right to assess was expressly confined " to be laid in accordance with the existing provisions of law relating to the paving of streets of the said city," which, as has been shown above, were those laid down in said section 878 of the Consolidation Act of 1882, and confined the right to assess to houses and lots.

But however broad the legislative permission, yet, as already noted, the ordinance, which is the only authority for the assessments, confined the right to lay the assessment among the owners or occupants of all the houses and lots intended to be benefited thereby. As Chief Judge RUGER said in *People ex rel. Davidson* v. *Gilon* (*supra*): "Under this act,[*] assessments for street improvements in New York were made from the time of its enactment until the passage of the Consolidation Act in 1882. These provisions were substantially re-enacted in that act, and since that time the charter has been the measure of the authority of the assessors of New York in making assessments of property for the payment of the expenses of street improvements. During a period of nearly eighty years these statutes have been practically construed by the municipal authorities to authorize assessments for such purposes, to be imposed upon the owners and occupants of houses and lots alone."

The respondent further contends that if said chapter 449 of the Laws of 1889 does not give sufficient authority, then authority may be had under section 946 of the Greater New York charter of 1897 (Laws of 1897, chap. 378), which became a law on May 4, 1897, to take effect on January 1, 1898, and which provided as follows:

" § 946. All assessments shall be made by the board of assessors on the following certificates, to wit:

" 1. The officer or head of the board or department charged with the execution of the work in question, shall certify to the board of assessors the total amount of all the expenses which shall have been actually incurred by The City of New York on account thereof.

" 2. The comptroller shall certify to the board of assessors the amount of the interest, at the legal rate, upon the several instalments advanced or payments made on account of such work, from the time of such payment or advance, by the city, to a day sixty days after the date of such certificate. Thereafter the board of assessors shall assess upon the property benefited, in the manner authorized by law, the aggregate amount of such certificates, or such proportion thereof as is authorized by law, and the said board shall not in any way be enjoined, restrained, hindered or delayed in the performance of this duty, provided that nothing contained in this section shall be construed to affect the powers of the board of revision of assessments."

In answer to this contention, it would seem sufficient to say that the only ordinance adopted was that to which attention has heretofore been called and which specifically limited the power

---

[*] See R. L. of 1813, chap. 86, § 175.— [REP.

of the assessors to assessing the expense among the owners or occupants of all the houses and lots intended to be benefited thereby. Furthermore it is not at all clear that the Legislature in the charter of 1897 intended to provide for the assessment for street improvements of incorporeal intangible property. Such an intention would be contrary to the uniform policy theretofore, and should be clearly expressed. It is moreover to be noted that wherever property is referred to in said charter of 1897 for the purpose of assessing expense upon it, it is designated as houses and lots, as in the former act. Also, by section 947 of said charter of 1897 it is provided that " the assessors shall in no case assess any house or lot, improved or unimproved lands, more than one-half the fair value of such house, lot, improved or unimproved lands," which would seem to show an intention not to depart from the classification of property theretofore set apart for the purposes of assessment. It would be unreasonable to suppose that the Legislature would make a distinction which would permit incorporeal property to be assessed for an amount greater than one-half of its value, while at the same time giving such protection to houses and lots.

In order also to make applicable section 946 of the charter of 1897, it is necessary to hold that the law to govern is the statute in force when the assessment was levied, rather than the statute in force when the work was authorized. This is opposed to the general principle that statutes are not retroactive unless dealing with remedial matters only, or unless specifically declared to be retroactive, or the language of the act renders such construction indispensable. (*People* v. *Wendel*, 217 N. Y. 260.) Moreover, in *People* v. *City of Brooklyn* (23 Barb. 180) it was held that a taxpayer who was not subject to an assessment for flagging under the law existing at the time the flagging was authorized, could not be made subject to such assessment by any subsequent legislation.

It follows that the judgment appealed from should be reversed, with costs, and judgment directed for the plaintiff, with costs.

DOWLING, MERRELL and MCAVOY, JJ., concur; MARTIN, J., dissents.

Judgment reversed, with costs, and judgment directed for plaintiff, with costs. Settle order on notice.