103 Park Avenue Company, Appellant, *v.* Exchange Buffet Corporation, Appellant, and The City of New York et al., Respondents.

New York city — change of grade — constitutional law — award properly made to lessee of portion of building for damage from change of grade of street — no denial of " due process " in that by legislative enactment a vested claim for damages is taken from owner and given to tenant.

1. By force of chapter 786 of the Laws of 1920, the board of assessors of the city of New York has jurisdiction to make an award for damages from change of grade of a street, to one who is a lessee of a portion of a building.

2. It is the duty of the court to search out the intention of the Legislature and to give effect to it when discovered though the expression be imperfect.

3. A contention that the act of 1920 (L. 1920, ch. 786) involves a denial of " due process " in that by force of its provisions a vested claim for damages is taken from the owner and given to the tenant

cannot be sustained. The argument misconceives the operation of the statute. The owner still recovers the damages, and all the damages, occasioned to the value of his interest, *i. e.,* the value of the reversion. The only effect of the amendment is to give a remedy to the tenant for the impairment of the value of the lease. The tenant thereby gains, but the owner does not lose.

*103 Park Ave. Co.* v. *Exchange Buffet Corp.,* 214 App. Div. 785, reversed.

(Argued March 1, 1926; decided May 4, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 18, 1925, affirming a judgment in favor of defendants, respondents, entered upon a dismissal of the complaint and of the counterclaim of defendant, appellant, by the court on trial at Special Term.

*James R. Deering* for plaintiff, appellant. The board of assessors had no jurisdiction to award or certify the estimate of damage to any one but the owner. (*103 Park Ave. Co.* v. *Exchange Buffet Corp.,* 200 App. Div. 111; 2 Lewis on Em. Dom. [3d ed.] 1253; *Matter of Delancey Street,* 120 App. Div. 700; *People* v. *Common Council,* 140 N. Y. 300; *People* v. *O'Brien,* 111 N. Y. 1; *People ex rel. Crane* v. *Hahlo,* 228 N. Y. 309; *Johnson* v. *Pettit,* 120 App. Div. 774; *King* v. *Mayor, etc.,* 102 N. Y. 172.) The plaintiff had a vested right to have the damages to its property awarded in accordance with the law as it existed at the time the damage accrued (Laws of 1918, chap. 619), and according to the proceedings thus taken by the city under said law. Such right was an easement in the street. (*103 Park Ave. Co.* v. *Exchange Buffet Corp.,* 200 App. Div. 111; *Torge* v. *Salamanca,* 176 N. Y. 324; *Matter of Grade Crossing Comrs.,* 209 N. Y. 139; *People ex rel. Janes* v. *Dickey,* 206 N. Y. 581; *Matter of Leist,* 189 App. Div. 155; *Mayer* v. *City of New York,* 193 N. Y. 535; *Matter of Southern Boulevard R. R. Co.,* 58 Hun, 497; *Matter of Crane* v. *Craig,* 230 N. Y. 452; *Matter of the Evergreens,* 47 N. Y. 216; *Matter of City of*

*New York* [*Higgins*], 222 N. Y. 370.) If section 951 of the charter, as amended by chapter 786 of the Laws of 1920, allows in some cases damages to lessees of a part of the premises, it cannot be applied to take away from the owner his right to full and all damages as provided by the law as it existed at the time the injury was inflicted and the right to the damage accrued. (*103 Park Ave. Co. v. Exchange Buffet Corp.*, 200 App. Div. 111; Cooley's Const. Lim. [7th ed.] 517; *Cooper-Snell Co. v. State of N. Y.*, 230 N. Y. 249; *Matter of the Evergreens*, 47 N. Y. 216.)

*Maurice L. Rippe* and *Henry Best* for defendant, appellant. In no event can plaintiff obtain this award, as the statute authorizes the award to an abutting owner of actual compensatory damages only. (*Radcliff's Exrs. v. Mayor, etc.*, 4 N. Y. 195; *Matter of Park Ave.*, 118 App. Div. 874; *Matter of Crane v. Craig*, 230 N. Y. 452; *Matter of Grade Crossing Comrs.*, 154 N. Y. 550; *People ex rel. City of New York v. Stillings*, 134 App. Div. 480; 200 N. Y. 525; *Fargo v. Browning*, 40 App. Div. 507.) The board of assessors was authorized to make an award to the Exchange Buffet Corporation on the claim filed by it. (*Ely v. Holton*, 15 N. Y. 595; *Matter of Borup*, 182 N. Y. 222; *People ex rel. Huntington v. Crennan*, 141 N. Y. 239; *People ex rel. Central Trust Co. v. Prendergast*, 202 N. Y. 188; *Cooper-Snell Co. v. State of New York*, 230 N. Y. 249; *Torge v. Salamanca*, 176 N. Y. 324; *Maus v. Logansport, P. & B. R. R. Co.*, 27 Ill. 77; *Wiley v. Solvay Process Co.*, 215 N. Y. 584; *Martin v. Goldstein*, 20 App. Div. 203.)

*George P. Nicholson*, Corporation Counsel (*John F. O'Brien* of counsel), for defendants, respondents. Neither section 951 of the New York charter (as amended by Laws of 1920, chap. 786), nor any other statute confers

jurisdiction upon the board of assessors to make an award for any amount to Exchange Buffet Corporation, as lessee of only part of the property. The purpose of the amendment to section 951 by chapter 786 of the Laws of 1920 was to vest a three-year lessee of the entire property with the remedy formerly vested in a ten-year lessee of the entire property. (*Radcliff's Exrs.* v. *Mayor, etc.,* 4 N. Y. 195; *Matter of Crane,* 230 N. Y. 452; *103 Park Avenue Co.* v. *Exchange Buffet Corp.,* 200 App. Div. 111; *People ex rel. Flatbush Gas Co.* v. *Coler,* 190 N. Y. 268; *P. R. T. Co.* v. *Dash,* 125 N. Y. 93; *Palmer* v. *Van Santvoord,* 153 N. Y. 612; *Smith* v. *B. & A. R. R. Co.,* 99 App. Div. 94; 181 N. Y. 132; Lewis' Suth. Stat. Const. [2d ed.] § 573; *Fitzgerald* v. *Quann,* 109 N. Y. 441; *Bennett* v. *Bennet,* 116 N. Y. 584; *Shotwell* v. *Dixon,* 163 N. Y. 43; *Tompkins* v. *Hunter,* 149 N. Y. 117.) Since $12,000 represents the total damage to plaintiff, it may not obtain the additional $36,000 which, as damage, was suffered by Exchange Buffet Corporation and which the board of assessors was without jurisdiction to award to any one. (*Matter of Borup,* 182 N. Y. 222; *People ex rel. Dady* v. *Prendergast,* 203 N. Y. 1.)

Cardozo, J. Plaintiff has owned for many years a twelve-story office building, No. 103 Park avenue, at the southeast corner of Park avenue and Forty-first street in the city of New York. In January, 1913, it leased to the defendant Exchange Buffet Corporation the corner stores on the ground floor and also part of the basement for a term of twenty-one years. In September, 1918, the city of New York adopted a plan for the change of grade of Park avenue by the erection of a viaduct between Fortieth and Forty-second streets. The work was completed and accepted by the city authorities in October, 1919. Claims for damages were filed with the board of assessors by owner and lessee. In February, 1921, the board of assessors made an award of $12,000 with interest

in favor of the owner, which award was confirmed by the board of revision. At the same time it made an award of $36,000 with interest in favor of the lessee, which also was confirmed.

Plaintiff, having collected the award of $12,000 made to it as owner, brings this action to establish its ownership of the award made to the lessee. The lessee, Exchange Buffet Corporation, has answered demanding judgment by way of counterclaim that its title be confirmed, and that payment be made accordingly. The city and the comptroller assert that the award to the lessee was made without jurisdiction, that the lessee is not entitled to anything, and that the plaintiff has been paid in full. The Special Term gave judgment to that effect. The Appellate Division unanimously affirmed.

The first question to be considered is whether the board of assessors has jurisdiction to make an award for damage to one who is a lessee of a portion of a building.

At common law an owner was without remedy against a municipality for the damage to his property through the change of an established grade (*Radcliff's Exrs.* v. *Mayor of Brooklyn*, 4 N. Y. 195). As early as 1816 the Legislature acted to mitigate the harshness of this rule in its application to street opening proceedings in the city of New York (L. 1816, ch. 160). The preamble to that act recites that " the Mayor, Aldermen and Commonalty of the city of New York, have by their memorial represented to the Legislature, that the opening and improving of streets in the compactly built part of the said city will not unfrequently render it necessary that a new regulation should take place in the elevation or depression of streets already regulated previous to such improvement, that by such new regulation, the buildings erected upon such streets in conformity with the previous regulation thereof, may be essentially damaged; and that no provision is made by the existing laws to afford indemnity to the owners of property thus injured, for the

loss and damage which may be sustained by them in the premises, and have prayed legislative aid for the purpose of such indemnity." The Legislature accordingly enacted that " if the said commissioners of estimate and assessment shall judge that such intended regulations will injure any building or buildings, not required to be taken for the purpose of opening, extending, enlarging, straightening, altering or improving such street or part of a street, or public place they shall proceed to make   *   *   *   a just and equitable estimate and assessment of the loss and damage which will accrue by and in consequence of such intended regulation, to the respective owners, lessees, parties and persons respectively entitled unto or interested in the said building or buildings so to be injured by the said intended regulation." No distinction was drawn between lessees of a part of a building and lessees of the whole (*Matter of William Street,* 19 Wend. 678, 683, 684; 2 Lewis on Eminent Domain, §§ 719, 750).

Section 978 of the New York City Consolidation Act of 1882 (L. 1882, ch. 410) continued chapter 160 of the Laws of 1816 without substantial change. The section as re-enacted forms part of title 5 of chapter XVI of the act, which is headed " Opening streets, avenues, and public places." Lessees as well as owners were protected as before.

Upon the adoption of the charter of Greater New York in 1897, section 978 of the Consolidation Act became section 980 of the charter. It was included within title 4 of chapter XVII, which dealt with " opening streets and parks." There was no modification of the remedies accorded to lessees.

At this point there is need to go back to the Consolidation Act and trace another title downward. Title 2 of chapter XVI is headed " Assessments for improvements *other* than opening and closing streets, etc." Included in this title are sections 873 and 874, which are substantially re-enactments of an act of 1852 (L. 1852, ch. 52; *Peo. ex rel.*

*Tytler* v. *Green*, 64 N. Y. 606.)   These sections provide in effect that where grades previously established shall afterwards be changed, the board of assessors are to estimate the "loss and damage which each owner of land fronting on such street or avenue will sustain by reason of such change to such lands, or to any improvements thereon." Unlike section 978, they do not touch a case where the grade is established for the first time, nor do they give a remedy for the damage to any one except the owner.

Sections 873 and 874 of the Consolidation Act were continued with slight changes in section 951 of the charter, which is part of title 2 of chapter XVII, dealing with "assessments for local improvements *other* than those confirmed by a court of record." The courts have held that the limitations of section 951 are without application to street opening proceedings conducted under section 980 of chapter XVII, title 4, of the charter of 1897 or under the corresponding provisions of the earlier Consolidation Act (*Matter of Mayor* [*Perry Avenue*], 118 App. Div. 874). For nearly a century there had been a remedy in such proceedings in favor of lessees as well as owners, and this whether an original grade or a new grade was the occasion of the damage. Section 951 as first enacted left that remedy intact.

The year 1915 brought radical changes of procedure. The whole of chapter XVII, title 4, of the charter was repealed (L. 1915, ch. 606), and there was substituted a new title which omitted the provisions of section 980 carried down without change since the act of 1816. As a partial offset to this omission, another act, adopted at the same session, amended and broadened the remedy under section 951 (L. 1915, ch. 537). Till then, an owner had been without a remedy under that section unless he had built upon his land at some time intermediate between the establishment of the grade by act of law and the change thereof (*Triest* v. *City of New*

*York*, 193 N. Y. 525).   Thereafter a remedy was to exist in favor of an owner who had built upon his property or otherwise improved it before a legal grade had been established.   No provision was made, however, in favor of lessees, though till then their remedies in street opening proceedings had been the same as those accorded to the owners of the fee.

An amendment adopted in 1918 brought back to lessees a portion, but only a portion, of the rights formerly enjoyed.   By chapter 619 of the Laws of that year the remedy under section 951 was no longer to be confined to owners.   The " owner who has built upon or otherwise improved his property " prior to the change, " and the lessee thereof " shall have compensation for the damage. This provision without more might not unreasonably have been interpreted as restoring, not only to lessees of the whole building, but also to lessees of a part, the compensation that had been theirs for nearly a century before.   The Legislature was not yet willing to be so generous, and to guard against misconstruction laid down its own definition.   " The word lessee as used in this section shall include only such parties or persons whose lease covers the entire real property and the term of which does not expire in less than ten years from the date of the completion and acceptance of the grading by the city authorities and who are obligated under their lease to make repairs and alterations made necessary by the grading."

Once more in 1920 the remedy was broadened.   An amendment of that year (L. 1920, ch. 786) changed the definition of a lessee by substituting a term of three years for the one of ten, by omitting the provision that the lessee must be obligated under the lease to make the repairs and alterations required by the grading, and by omitting the provision that he must be a lessee of the entire building.   " The word lessee as used in this section shall include only such parties or persons whose lease does not

expire in less than three years from the date of the completion and acceptance of the grading by the city authorities."

We find in this amendment persuasive disclosure of the intention of the Legislature to extend the statutory remedy to a lessee of a portion of the building whenever three years of the term are unexpired at the acceptance of the grade.   Standing alone, the statement that there shall be a remedy for the owner who has built upon " his property " and also for " the lessee thereof " is lacking in precision.   A tenant who occupies an entire building is a lessee of property belonging to his landlord, but so also, it may not unreasonably be said, is a tenant who occupies a part.   The Legislature of 1918 recognizing this ambiguity coupled the remedy with a definition which restricted the award to the lessee of the whole.   If the Legislature of 1920 had been willing to maintain this restriction, we may presume it would have said so.   Instead, it continued to give a definition of lessees, but dropped from that definition the phrase whereby the apparent generality of the remedy had been made subject to restrictions.   We think the inference is legitimate that the restrictions were abandoned, and that the word was thereafter to be read, not narrowly, but broadly.   Our duty is to search out the intention of the Legislature and to give effect to it when discovered though the expression be imperfect (*Smith* v. *People,* 47 N. Y. 330, 337).   Other changes wrought by the same act make for greater liberality.   We think a like spirit dictated the omission of the requirement that only the lessee of the whole building was to have the benefit of the remedy.   The Legislature did not mean to be less liberal in that regard than its predecessors in 1816 and for a century thereafter.   What it did was no untried and thoughtless innovation.   The background of history supplies the setting and perspective.

Such a holding is reinforced when we view the mischief

to be remedied. A lessee of part of a building may suffer loss from change of grade as surely and as gravely as a lessee of the whole. The statute reasonably requires that the unexpired term shall be substantial. The city ought not to be vexed with claims for petty losses. If this condition is satisfied, reparation ought to follow. The equity of such relief has illustration in the case before us. The lessee of the ground floor became bound to the payment of heavy rent in reliance on the existing grade. Its damage is far in excess of any that has been suffered by the owner of the fee. It must bear its loss without requital if this judgment is to stand. A like result would follow though the unexpired term were ninety-nine years or more. So also, the omission from the lease of any portion of the building, a floor or even a room, would leave the tenant helpless. One may suppose a case where a tenant is in possession under a lease to expire in a century with an exception from the demise of the basement or the cellar. In such a situation, the owner of the property would have a remedy, if a change of grade should follow, though his damage in all likelihood would be slight or even nominal. The real burden of the loss would be borne by the tenant. Indubitably a tenant so situated would be a lessee of property belonging to the landlord-owner. We cannot bring ourselves to believe that he would not be a " lessee thereof " within the meaning of the statute.

The plaintiff makes the point that the act of 1920 (L. 1920, ch. 786) involves a denial of " due process " in that by force of its provisions a vested claim for damages is taken from the owner and given to the tenant. The argument misconceives the operation of the statute. The owner still recovers the damages, and all the damages, occasioned to the value of his interest, *i. e.*, the value of the reversion. The only effect of the amendment is to give a remedy to the tenant for the impairment of the value of the lease (*Fries* v. *N. Y. & H. R. R. Co.*, 169

N. Y. 270, 280). The tenant thereby gains, but the owner does not lose.

The judgment of the Appellate Division and that of the Special Term should be reversed, and judgment granted in favor of the defendant Exchange Buffet Corporation as prayed for in its counterclaim with costs in all courts.

POUND, MCLAUGHLIN and CRANE, JJ., concur; HISCOCK, Ch. J., ANDREWS and LEHMAN, JJ., dissent.

Judgment accordingly.