HERMINA VANDEWEGHE, Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Bronx County, March 14, 1934.

*Chambers & Chambers [Harry B. Chambers, Harry H. Chambers* and *Joseph B. Kenny* of counsel], for the plaintiff.

*Paul Windels, Corporation Counsel [Charles W. Miller* of counsel], for the defendant.

McLAUGHLIN, J.  This is an action brought by the plaintiff to recover an assessment which was paid under protest for what the city claims is the paving and what plaintiff asserts is the repaving of Grand avenue between West One Hundred and Seventy-sixth street and West Tremont avenue, Bronx county, New York city. The plaintiff has established that before June 20, 1910, a pavement was laid by the property owners along and over this street at the

above place. This matter was before our appellate courts and the procedure here adopted was suggested. However, the court did not pass upon the question raised by the corporation counsel on this trial. (*Matter of Fuerth*, 226 App. Div. 252; affd., no opinion, 252 N. Y. 510.)

At the outset it may be said that the testimony of the plaintiff's witnesses is to be believed. I see nothing about it or the demeanor of these men on the witness stand which indicated that they were not telling the whole truth. The city now objects to the kind of pavement, but there was nothing mentioned in section 948 of the Greater New York Charter as it existed in 1910 which prohibited such a pavement. Many streets and avenues in the Bronx are paved in this manner and have been so almost since consolidation. It was surely an acceptable way of paving, because it has been used and never changed in many instances. Why now object to something that the city got the benefit of for many years unless it was prohibited by law at the time it was laid? But there is no dearth of a legal definition of pavement. This particular pavement in the roadway was macadam. The sidewalks were made of cement, while the curbs and gutters were of concrete.

In *Lilienthal* v. *City of Yonkers* (6 App. Div. 138; affd., on opinion below, 154 N. Y. 766) the court had occasion to consider the meaning of the word " pavement." BROWN, P. J., said: " The work for which the present assessment was levied was pavement. In the specifications the work to be done on the street is designated as ' Macadam pavement ' and ' Telford Macadam.' The ' gutter pavement ' was to be of stone. The character of the work called for fulfills the meaning of the word ' pavement ' as defined by lexicographers and as it is understood in ordinary intercourse. The meaning of the word cannot be limited by the particular material used on the street, nor has it reference solely to the manner in which the material is spread upon the street. *Any substance which is spread upon the street so as to form a compact, hard or level surface or floor, may be properly designated as pavement.*"

In *Matter of Phillips* (60 N. Y. 16) the Court of Appeals, speaking by ALLEN, J., said (at p. 22): " To pave is to cover with stones or brick, or other suitable material, so as to make a level or convenient surface for horses, carriages, or foot-passengers, and a sidewalk is paved when it is laid or flagged with flat stones as well as when paved with brick, as is frequently done. If the laying of a sidewalk or footway with brick would be a paving, or if done a second time a repaving, and it would certainly come within the ordinary signification of that term, then a relaying the same surface with flat stones would be well designated under the general term as a pavement.

The difference in the material could not change the character or general identity of the work as embraced in the generic term, which includes any process for covering a street or walk or public place with stone or brick or concrete, so as to give a level surface, convenient for use in the manner and for the purpose for which it was intended."

In *Matter of Burmeister* (76 N. Y. 174) the Court of Appeals said (at p. 181): " Pavement is a more comprehensive word than flagging; it includes flagging, as well as other modes of making a smooth surface for streets, including sidewalks."

The contention of the defendant that the paving did not have the express approval of the borough president is not fatal because none was required, and even if it were the tacit acceptance by this official over a long period of years estops the city. He stood by and never protested. He could have stopped the work or could have ripped it up if he disapproved. The answer is plain. It was satisfactory just as miles of streets in the Bronx are satisfactorily in use today and have been for many years where this kind of pavement was used. There is no merit to the argument that section 134 of the Code of Ordinances (now chap. 23, art. 7, § 61) bars a recovery here. The city may not accept and use something or permit it to be used for the public welfare and then say long after that time that it will not be bound by such acceptance.

Where this case determined by the charter provision (§ 948) as it existed at the time of the original paving, then there is no doubt that the plaintiff should recover. The section is simple and says that no assessment shall be levied for paving where the street has been paved and the expense paid by the owners of the adjoining property. The property owners at that time were exempt from the payment of any assessment for any future pavement. There was no restriction of any kind upon the pavement used and hence there was an exemption from a particular tax. The next question presented here is this: Does section 948, as amended in the form it was in 1925, take away this exemption, and if it does may it do so legally and constitutionally? The doctrine of estoppel applies equally to a State or municipality as it does to an individual. " That an estoppel can arise against a municipality is well settled (*Abells* v. *City of Syracuse*, 7 App. Div. 501; *Moore* v. *Mayor*, 73 N. Y. 238, 248; *North River Electric Co.* v. *New York*, 48 App. Div. 24), and this appears to be a proper situation to apply the rule of estoppel." (*Trustees of Village of Bath* v. *McBride*, 163 App. Div. 714, at p. 719; revd. on other grounds, 219 N. Y., 92.) If one is impelled to change his position and do something, relying upon what the other party says, then the doctrine of equitable estoppel is asserted

against the latter. (*Firestone* v. *Miroth Construction Co.*, 215 App. Div. 564; *Underwood* v. *Farmers' Joint Stock Ins. Co.*, 57 N. Y. 500.)

There is little or no difference between this principle and the rule laid down by EARL, J., in *Langdon* v. *Mayor* (93 N. Y. 129, at pp. 156 and 157), except that there the court was talking about exemptions made in a grant to a corporation. I believe that principle applies to any contract made by the city or State through an offer made in the statute or charter and accepted by the citizen or property owner. Any other situation would make us subject to retroactive laws, and no matter what the consideration of the contract might be on the side of the property owner, the city could run out of its bargain or obligation at the whim of any succeeding Legislature. Such a situation would be intolerable.

The present section 948 does not bar a recovery. However, were this section in existence in its present form in 1910 I believe that the property owner would be bound to live up to its requirements in order to be entitled to the benefits of any paving. The section as it stood in 1925 must be read as a whole. The construction of this act is dependent upon the intention of the Legislature as therein expressed. (*103 Park Ave. Co.* v. *Exchange Buffet Corp.*, 242 N. Y. 366; *Osborne* v. *International Ry. Co.*, 226 id. 421; *Johanns* v. *Ficke*, 224 id. 513; *New York R. Co.* v. *City of N. Y.*, 218 id. 483.) I am eliminating at this point temporarily any possible constitutional conflict or any effect of the provisions of the General Construction Law. Reading this statute as a whole, it is clear that the Legislature never intended by this amendment to interfere with these exemptions which were earned by the property owner and which were recognized, the benefits of which were accepted by both city and State. The plain intendment would be that if it were intended to take away an exemption, the Legislature would say so in so many words. In construing a statute it is the court's duty to avoid that construction which would lead to injustice and the court should find that intention which will give the statute a reasonable construction. (*People ex rel. Tave* v. *Palmer*, 132 Misc. 119; affd., 223 App. Div. 777; *Matter of Littleton*, 129 Misc. 845.) It would surely be an unreasonable construction and one steeped in injustice to say that the Legislature of this State was something worse than the proverbial " Indian giver " in taking back that which it gave and which was based upon a valuable consideration, namely, the use of this pavement over a number of years. The court should not give it such a construction in the absence of express statement to that effect by the Legislature.

We are mindful of the rule of statutory construction that the object of the statute must be kept in mind and such construction

placed upon it as will effect its purpose. (*Matter of Jannicky,* 209 N. Y. 413; *Heerwagen* v. *Crosstown St. Ry. Co.,* 179 id. 99; *Delafield* v. *Brady,* 108 id. 524.) Even so, it seems plain that the Legislature was directing its efforts to the future. Any other construction would result in an injustice and oppression which might be prevented by the court. (*Matter of Meyer,* 209 N. Y. 386; *People ex rel. Burhans* v. *City of New York,* 198 id. 439; *People ex rel. Hannan* v. *Board of Health of City of Troy,* 153 id. 512; *Hayden* v. *Pierce,* 144 id. 512; *Polhemus* v. *Fitchburg R. R. Co.,* 123 id. 502.) It is clear that this property owner had, to say the least, existing rights and, therefore, the language of the statute should receive such construction as will not impair them unless a contrary intent clearly appears. (*Jersey City* v. *North Jersey St. R. Co.,* 72 N. J. Law, 383; *State* v. *Natsuhara,* 136 Wash. 437; 240 Pac. 557.)

All this is quite evident when we consider the rule that statutes must be presumed to be prospective only, not retrospective or retroactive, unless the contrary clearly appears, either expressed or necessarily implied. (*Fairclough* v. *Southern Pacific Co.,* 171 App. Div. 496; affd., 219 N. Y. 657; *People* v. *Wendel,* 217 id. 260.)

In *Knickerbocker Ice Co.* v. *City of New York* (209 App. Div. 434; affd., 239 N. Y. 595) the language of the court (at p. 438) is as follows: " In order also to make applicable section 946 of the Charter of 1897, it is necessary to hold that the law to govern is the statute in force when the assessment was levied, rather than the statute in force when the work was authorized. This is opposed to the general principle that statutes are not retroactive unless dealing with remedial matters only, or unless specifically declared to be retroactive, or the language of the act renders such construction indispensable. (*People* v. *Wendel,* 217 N. Y. 260.) *Moreover, in People* v. *City of Brooklyn* (23 Barb. 180) *it was held that a taxpayer who was not subject to an assessment for flagging under the law existing at the time the flagging was authorized, could not be made subject to such assessment by any subsequent legislation.*" (Italics mine.)

Now we may go a little further and see if the statute infringes upon the Constitution and the General Construction Law of this State. There is nothing unconstitutional about this new section. I do not believe that we can take away from a State the arbitrary right to tax even property which had formerly been declared exempt by the Legislature. (*Pratt Institute* v. *City of New York,* 183 N. Y. 151; *People ex rel. Cooper Union* v. *Gass,* 190 id. 323; *Matter of Pardee* v. *Rayfield,* 192 App. Div. 5, at p. 9; affd., 230 N. Y. 543; *Matter of Lockitt,* 58 Misc. 5; affd., 127 App. Div. 925.)

This is the basic right of the State and without which it could not exist. It might mean — it might be oppressive — but it is none the less legal to enforce this new assessment. (*City of New York* v. *Union Ry.*, 206 App. Div. 472; affd., 238 N. Y. 571.) But unless such statute expressly so provides, it must be held to apply to new situations unaffected by existing rights. These rights came into being under the old statute. This amending statute is in reality a repealing act. (*Matter of Prime*, 136 N. Y. 347, 352; *People* v. *Wilmerding*, Id. 363, 369.) It is expressly provided that the "repeal of a statute or part thereof shall not affect or impair any act done, offense committed or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be enjoyed, asserted, enforced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected." (General Const. Law, § 93.) It is true that the old statute simply set forth a policy and the State could subsequently change that policy and tax for a paving. (*Straus & Co.* v. *Canadian Pacific Ry. Co.*, 254 N. Y. 407, 413; *People ex rel. Bull* v. *City of Buffalo*, 52 App. Div. 157, 162; affd., on opinion below, 166 N. Y. 604.) It is also true that where the Legislature once exempts there must be express words or necessary implication withdrawing that exemption to take it away from the property owner. You have not that in this case, but, on the contrary, the clear implication is that this statute acts prospectively and where exemptions have been given they remain. Anything less would be injustice. That spirit pervades our legislation, for the general effect of section 93 of the General Construction Law is to preserve any rights which have accrued under repealed statutes. (*Matter of Iovinella*, 166 App. Div. 460; *Lang* v. *Lutz*, 83 id. 534; affd., 180 N. Y. 254; *Lancaster* v. *Knight*, 74 App. Div. 255.)

There is no merit to the city's claim that plaintiff's Exhibits 4, 8 and 9 are inadmissible.

Judgment for plaintiff.