Raymond L. Wilkes, J.
Although the Legislature may bend the twig of the law to the wind of necessity now and then — the twig need not break from the tree — it should remain a piece of the whole, a part of the main — its function still to perform, but not beyond its manifest purpose. Let us now see the manner in which these modest aphorisms apply to the cause at bar.
The defendant has made two motions (1) to inspect the Grand Jury minutes herein (CPL 210.30, subd. 2), and upon inspection to dismiss the indictment upon the ground that it was founded upon insufficient legal evidence (CPL 210.20, subd. 1, par. [b]), and (2) to suppress material seized upon execution of an allegedly unlawful search warrant (CPL 710.20, subd. 1).
The application for the court to inspect the Grand Jury minutes is granted. (CPL 210.30, subd. 3.) Upon a thorough examination of' the Grand Jury minutes, the court finds there to be sufficient legal evidence to sustain the indictment. Therefore, that motion is denied.
The defendant’s motion to suppress is based upon the following grounds:
(1) the affidavit in support of the search warrant did not specifically describe the property to be seized;
(2) the court issuing the warrant lacked the authority to direct a search of premises in the County of Queens ;
(3) the police officer who executed the search warrant lacked authority to do so in the County of Queens.
The applicable sections of the Criminal Procedure Law are:
(a) CPL 690.05 (subd. 1) which provides that “Under circumstances prescribed in this article, a local criminal court may, upon application of a police officer, a district attorney or other public servant acting in the course of his official duties, issue a search warrant. ”
(b) CPL 690.20 (subd. 2) provides that “A search warrant issued by a city court, a town court or a village court may be executed pursuant to its terms only in the county of issuance or an adjoining county. ”
(e) CPL 690.25 (subd. 2) provides that “A police officer to whom a search warrant is addressed, as provided in subdivision *1037 one, may execute it pursuant to its terms anywhere in the county of issuance or an adjoining county, and he may execute it pursuant to its terms in any other county of the state in which it is executable if (a) his geographical area of employment embraces the entire county of issuance or (b) he is a member of a police department or force of a city located in such county of issuance. ’ ’
The court has before it a search warrant issued on or about March 1, 1972 by a Town Justice of the Town of Harrison, County of Westchester, State of New York, authorizing the search of premises 6901 35th Avenue, Apartment 4J, Jackson Heights, County of Queens, State of New York, and any garage or storage area rented by James J. Donlin. Said search warrant was directed to. any peace officer in the Town of Harrison, County of Westchester, State of New York.
The foregoing sections of the GPL as well as the above circumstances attendant to the issuance of the search warrant are distilled for discussion and disposition in the following query, namely: Is Queens County contiguous to Westchester County?
The court has examined two maps utilized by the New York State Department of Transportation, specifically one entitled “Flushing Quadrangle, New York, 7.5 Minute Series Planimetric (406736 DP) ” and the other entitled “ Sea Cliff Quadrangle, New York, 7.5 Minute Series Planimetric (406736 DP).” Said maps set out the boundaries of the Counties of Nassau, Queens, Bronx and Westchester in relation to Long Island Sound. After careful examination of those maps the court concludes that at no point are the boundaries of Queens and Westchester contiguous.
The District Attorney, in opposition to the defendant’s application, cites CPL 1.20 (subd. 36), which reads as follows: “ ‘ County ’ ordinarily means (a) any county outside of New York City or (b) New York City in its entirety. Unless the context requires a different construction, New York City, despite its five counties, is deemed a single county within the meaning of the provisions of this chapter in which that term appears. ” (Emphasis supplied).
A “ County ” is defined in section 3 of the County Law of the State of New York as “ a municipal corporation comprising the inhabitants within its boundaries and formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as may be imposed or conferred upon it by law. ”
Article VI (§1, subd. c) of the Constitution of the State of New York states in part: “ that processes, warrants and other *1038 mandates of town, village and city courts outside the city of New York may he served and executed in any part of the county in which such courts are located or in any part of an adjoining county. ”
It is by now well settled to the point of virtually being axiomatic that when embarking upon the construction of a statute the intent of the Legislature as well as the purpose of the law is to be looked for. (People ex rel. Killeen v. Angle, 109 N. Y. 564) “ Our duty is to search cut the intention of the Legislature and to give effect to it when discovered though the express sien be imperfect.” (103 Park Ave. Co. v. Exchange Buffet Corp., 242 N. Y. 366, 374 [Cardozo, J.].) In addition, the design of the Legislature must be given effect “ though such a construction seems contrary to the letter of the statute. ” (See Allen v. Stevens, 161 N. Y. 122, 145.) See People ex rel. Jackson v. Potter (47 N. Y. 375, 379), wherein Judge Folger, speaking for a unanimous court said: “ The intent of the law-maker is to be sought for. When it is discovered, it is to prevail over the literal meaning of the words of any part of the law. And this intent is to be discovered, not alone by considering the words of cmy part, but by ascertaining the general purpose of thé whole, and by considering the evil which existed calling for the new enactment, and ihe remedy which was sought to be applied. And when the intent of the whole is discovered, no part is to be so construed as that the general purpose shall be thwarted, but all is to be made to conform to reason and good discretion. (Id.) And the same rules apply to the construction of a Constitution as to that of a statute Icm.” • (Emphasis supplied.)
In addition 4o the foregoing, what better .source to refer to for ultimate guidance than the trenchant thoughts so incandescently illumined by Mr. Justice Cardozo in his ageless and indeed priceless work, “The Nature of the Judicial Process ” wherein he says:
‘ ‘ Where does the judge find the law which he embodies in his judgment? There are times when the source is obvious. The rule that fits the case may be supplied by the constitution or by statute. If that is so, the judge looks no farther. The correspondence ascertained, his duty is to obey. The constitution overrides a statute, but a statute, if consistent with the constitution, overrides the law of judges. In this sense, judge-made law is secondary and subordinate to the law that is made by legislators. It is true that codes and statutes do not render the judge .superfluous, nor his work perfunctory and mechanical. There are gaps to be filled. There are doubts and ambiguities *1039 to be cleared. There are hardships and wrongs to be mitigated if not avoided. Interpretation is often spoken of as if it were nothing but the search and the discovery of a meaning which, however obscure and latent, had nonetheless a real and ascertainable pre-existence in the legislator’s mind. The process is, indeed, that at times, but is often something more. The ascertainment of intention may be the least of a judge’s troubles in ascribing meaning to a statute. ‘The fact is,’ says Gray in his lectures on the ‘ Nature and Sources of the Law, ’ ‘ that the difficulties of so-called interpretation arise when the legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the legislature did mean on a point which was present to its mind, hut to guess what it would have intended on a point not present to its mind, if the point had heen present.’ ” (Emphasis supplied.)
In order for the People to prevail upon this application, the term “ County ” as defined in the New York .State Constitution must be given the same interpretation as that of the CPL. However, there can be no dispute but that the term ‘ ‘ county ’ ’ as used in article VI § 1, subd. c) of the New York State Constitution must be taken to mean precisely what it says. It must be given its usual and ordinary meaning, and no vague and general connotation may be attributed to it. (See McKinney’s Cons. Laws of N. Y., Constitution, Rules of Interpretation, § 8 and cases cited thereunder.)
It is left to this court to determine the intent of the Legislature in enacting the various sections of the CPL hereinabove referred to. “In the construction of statutes, each word in the statute must be given its appropriate meaning, and sense must be brought out of the words used. So the language employed in a statute should be given a reasonable and sensible construction to carry out, if possible, the intention of the Legislature.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 94.)
A Town Justice cannot be given greater authority by a statute than is allocated to him by the Constitution. Acceding to the arguments of the District Attorney would produce just such a result.
A thoughtful reading of the phrase “Unless the context requires a different result” as used in defining the term “county” in the CPL transparently reveals the intention of the Legislature. Simply put, a broad definition of ‘ ‘ county ’ ’ may be used so long as such use does not create greater powers than authorized by the Constitution. The CPL provides that New *1040 York City be considered to be one county for the same reasons that have prompted the enactment of special legislation with regard to New York City from time to time. In addition, when necessity and desire upon the part of the State Legislature have coalesced to the point of action, amendments have even been occasionally incorporate^ into the New York State Constitution with the problems indigenous to the City of New York specifically in mind. New York City being the only city in the State of New York to encompass more than one county, it occasionally requires special provisions in order to permit internal administration not only of its courts but of all phases of its internal affairs. It would manifestly be an improvident exercise of discretion to permit such special provisions to expand the authority of governmental agencies outside of the City of New York, in this instance the local court of the Town of Harrison.
Article 690 of the CPL specifically enumerates the special provisions necessary for New York City (CPL 690.20, subd. 1; 690.25, subd. 2, par. [b]). Therefore, the court finds that the term “ county ” as used in article 690 of the CPL must take its customary meaning, and New York City may not be deemed one county for the purpose suggested by the People herein.
Some may prefer to see the tree of the law leaf by leaf— others branch by branch — this court prefers to view it as a whole. To do otherwise would simply rough hew article VI (§1, subd. c) of the Constitution of the State of New York and negate the all too obvious premise that CPL 1.20 (subd. 36) was drawn to fit the intra-city situations it was intended to serve.
In view of the foregoing, this court finds that the Town Justice of Harrison, New York, a part of Westchester County, was without authority to issue a search warrant executable in Queens County, (a county not contiguous with Westchester County) and further finds that a peace officer of the Town of Harrison, New York, is not authorized to execute a warrant in Queens County. Therefore, the defendant’s motion to suppress evidence seized pursuant to such warrant is granted, and the evidence obtained as a consequence thereof will not be admissible upon the trial of this indictment.